## MEHAFFY *against* SHARE, for the use of HAINS.

P. S. M. and D. purchased a tract of land of E., and with L. S. and C. as their sureties, gave E. a bond for the price. It was understood by the parties, that L. was surety for P. and S. and C. for M. and D., and that S. gave none. After several payments, E. brought suit. The writ was served upon all but M., and judgment obtained. A settlement was had between the defendants, to ascertain how much as between themselves each was to pay, and it was found that P. was deficient a large sum. P. and L. gave to M. and D. a bond to indemnify them for any money they might have to pay for P. on the bond to E. E. issued execution on her judgment, and sold the land of S. out of which she received the amount of her bond which should have been paid by P.

S. being in debt to H. and arrested by him, S. executed to him a power of attorney irrevocable for the use of H., to sue for and recover of and from the estate of P. and from L. all sums, &c. due S. P. died insolvent. *Held*, in a suit brought by S. for use of H. against M. to recover contribution for his portion of P's. deficit, paid out of the property of S., and in which M. had pleaded in abatement, that H. had no authority to sue him, and issue was joined on that fact alone, that it was competent to prove by the subscribing witness to the power, who drew it at the request of *S.* and *H.* that all the circumstances of this transaction, had been explained by S. to H., that it was this claim arising from this transaction and payment for P. to E. which was to be transferred, but it was P. and L. who were spoken of as liable to pay it.

An assignment of a particular claim passes all remedies and liabilities, which the assignor had to secure and recover it to the assignee, although they are not specifically named, or set forth in the assignment, and H. on the assignment of S. of his claim for contribution, had a right to recover from M., although he was not named in describing that claim.

The record of a suit brought by S. for use of H. against L., in which the plaintiff suffered a non-suit, was not evidence in the action of S. for use against M. nor were judgments and mortgages existing against S. at the time of the assignment of the claim to contribution; that claim was a mere *chose in action*, which S. alone could sue, or give to any of his creditors: nor was a former suit by S. for H. against M., still pending, although for the same cause of action, evidence in this suit in which the issue was upon such plea in abatement.

Where suit is brought in the name of a nominal plaintiff, for the use of another, by the act of assembly of the 23d April, 1829, the suit does not abate by the death of the nominal plaintiff.

If issue in fact be joined upon the replication to a plea in abatement, and found for the plaintiff, the jury should assess the damages, and the judgment is peremptory for the delay, *quod recuperet*, and not *quod respondeat*.

Where an action of assumpsit can, or must be brought, and the amount which the plaintiff seeks to recover, appears by a writing under seal, or a judgment, such writing, or judgment, is evidence for the plaintiff in the action of assumpsit.

*It seems* that where one of several principals pays a judgment, he is not entitled to be substituted to obtain contribution, as a surety is to obtain payment from the principal, when such surety pays the debt.

APPEAL from the Circuit Court, held by *Kennedy*, J. for *Lancaster* county.

The action was assumpsit for money paid, and expended, lent and advanced, by *Henry Share*, for the defendant, *James Mehaffy*. The suit was brought for the use of *Henry Hains*, whose right to sue, formed the principal ground of controversy in the

cause. The pleadings which are material to the understanding of the cause, were as follows:

"And the said *James Mehaffy*, in his own proper person, comes and defends the wrong and injury, &c. and says, "that before and at the time of issuing the summons in this case, and of bringing this suit, *Henry Hains*, the *cestui que use*, and for whose use the said suit appears to have been brought, had no power or authority from *Henry Share*, to bring this suit, or any suit in the name of *Henry Share*, *for the use of Henry Hains, against James Mehaffy, the now defendant*. That the power from *Henry Share*, to *Henry Hains*, to sue and collect money in the name of *Henry Share* for the use of *Henry Hains*, given and dated in *May*, 1821, is a special power to sue *Parker* and *Hiestand*, *Jacob Breneman*, and *Joseph Lytle*, and no other person or persons and no power to bring the present suit: And this the said *James Mehaffy*, is ready to verify. Whereupon he prays judgment whether the defendant ought to be compelled to answer the plaintiff, and that the summons issued abate, &c. *James Mehaffy*, affirmed, &c.

To this plea the plaintiff filed the following replication:

"And the said *Henry Share*, who sues for the use of *Henry Hains*, saith that the said writ ought not to be abated, or quashed by reason of any thing by the said *James Mehaffy*, in his said plea above alleged. Because, he saith, that he the said *Henry Share*, the said *James Mehaffy*, and a certain *John Pedan*, and *James Duffy*, purchased a certain tract of land, of a certain *Frances Evans*, and to secure the payment of such part of the purchase money as was not in hand paid, gave their bond, dated the 6th of April, 1813, with *Joseph Lytle*, as the surety of *John Pedan*, *Henry Cassel* as the bail of *James Duffy*, and *George Snyder* as the bail of *James Mehaffy*, the said *Henry Share*, being by the said principals not required to give any surety as amongst themselves; that the money payable by the said bond, not being paid according to the tenor thereof, the said bond was put in suit in the Common Pleas of *Lancaster* county, to November term, 1815, upon which suit such proceedings were had, that judgment was rendered, and execution issued thereon, and the real estate of the said *Henry Share*, levied, condemned and sold on a *venditioni exponas*, returnable to *November* term, 1821, for 16100 dollars, of which the said *Frances Evans* received $9322, 43½ in satisfaction of her said judgment besides the costs of suit.

"And the said *Henry Share*, further saith that the said *James Mehaffy* and *James Duffy*, on the 19th day of July, 1815, took a bond from the said *James Pedan* and *Joseph Lytle*, to indemni-

(Mehaffy *v.* Share.)

fy and save harmless the said *James Mehaffy* and *James Duffy*, from the payment of $3616,71½, then and still due and owing by the said *John Pedan*, as his share and purpart of the said bond, of the said *Frances Evans*, until she received satisfaction for the same with its interest, by the sale of the real estate of the said *Henry Share*, as aforesaid; that the said *John Pedan*, at the time of the sale of the said *Henry Share's* real estate was, and is wholly insolvant and died so. That the said *Joseph Lytle* was, and is fully indemnified, and saved harmless for becoming surety of the said *John Pedan*, in the said bonds respectively, and has and holds the said money in his hands. And the said *Henry Share*, further says, that on the 17th day of August, 1819, he drew a promissory note in favor of *Henry Cassel*, or order, payable sixty days after date, at the Farmers' Bank of *Lancaster*, for value received for $2825, which he the said *Henry Cassel*, and the said *Henry Hains*, indorsed to the said bank, and directed the payment of the said note, when discounted to be paid to the said *Henry Share*, which he received, which note, not being paid according to its tenor, was in due form of law protested, and the said *Henry Hains* to redeem himself from his said indorsement, and the protests of the said note paid to the said bank in satisfaction of the same, the sum of $2982, 76, on the 5th day of September, 1820. And the said *Henry Share*, further says, that on the 17th day of February, 1819, he made his promissory note, payable to the order of the said *Henry Hains*, junior, at the office of discount and deposit at *Lancaster*, for the sum of $2700, without defalcation for value received, which the said *Henry Hains*, and a certain *Henry Hains*, indorsed to the said bank, and directed the amount of the said note to be paid to the said *Henry Share*, which said note, not being paid according to its tenor, the said *Henry Hains*, the payee and indorser of the said note, to redeem himself from his said indorsement of the said note, and the protest thereof, on the 28th day of April, 1819, paid to the said office of the sum of $2708 48, in satisfaction of the said note. And the said *Henry Share*, further says, that he the said *Henry Share*, to save harmless and indemnify the said *Henry Hains*, junior, from the payment of the said two several sums of money, for him the said *Henry Share*, as well by the said instrument of writing in said plea, stated, of the 12th May, 1821, which was by mistake of the scrivener, not drawn according to the intent of the parties, as well as by parol transferred and made over to him, the said *Henry Hains*, (among other things,) all and every right, title, claim, interest and demand in law and equity, which he the said *Henry Share* had enjoyed, and held and was entitled to, for compensation and contribution from the said parties principals and their surety, respectively; in the said

(Mehaffy *v.* Share.)

bond and judgment of the said *Frances Evans,* to wit: the said *James Mehaffy, James Duffy* and *John Pedan,* to the extent of the moneys levied and paid on the said bond and judgment for each of them by the said *Henry Share,* to the said *Frances Evans,* by and arising from the sale of the real estate of him, the said *Henry Share.* And this he the said *Henry Share* is ready to verify. Whereupon he prays, judgment and his damages by him sustained on occasion of the non-performance of the said promise and undertaking of the said *James Mehaffy,* in the said declaration mentioned to be adjudged to him," &c.

On the 2d of May, 1829, the defendant obtained a rule to shew cause why the replication should not be struck off, and on the 9th of May following, the court directed the defendant to rejoin to the replication filed, whereupon the following rejoinder and sur-rejoinder, and issue were put in.

"And the said *James Mehaffy,* as to the replication of the said plaintiff, to the said defendant's plea in abatement pleaded; protesting against the truth of all and singular the facts therein stated and set forth, and also protesting that they contain no answer to the facts stated, and issue tendered by the defendant's plea in abatement saith, that the said plaintiff ought not, by reason of any thing by him alleged, to have or maintain his said writ of summons against him, the said *James Mehaffy.* Because he saith that the said *Henry Share* did not either by the said instrument of writing, in the defendant's plea in abatement stated, or by parol, transfer and make over to the said *Henry Hains,* any right or authority to issue the original writ of summons in this cause. And of this, he the said *James Mehaffy* puts himself upon the country."

And the said plaintiff, doth the like, issue and rule for trial.

And now to wit, the 25th April, 1831, the defendant filed an affidavit of the death of *Henry Share,* and objected to the jury being sworn until his personal representative should be made a party to the suit: this objection was over-ruled by the court, and the jury was ordered to be sworn, to which the defendant excepted. The jury was then sworn and the trial progressed.

The plaintiff produced and proved the execution of the following power of attorney or assignment, which was received in evidence:

"Know all men by these present, that I *Henry Share,* of *Donegal* township, *Lancaster* county, and state of *Pennsylvania,* have made, ordained, authorized, constituted and appointed, and by these presents, do make, constitute and appoint *Henry Hains,* junior, of *Donegal* township, aforesaid, my true and lawful attorney, irrevocably for me and in my name, but to the use of him the said *Henry Hains,* junior, to ask, demand, sue for and recover and re-

(Mehaffy *v.* Share.)

ceive of and from *Jacob Breneman*, of *Donegal* township, afore-
said, the estate of *John Pedan*, deceased, and *Joseph Lytle*, in
*Rapho* township, *Lancaster* county aforesaid, all and every such
sum, and sums of money, debts and demands, which now are, or
may become due, and owing to me the said *Henry Share*, by and
from the said *Jacob Breneman*, the estate of *John Pedan*, deceas-
ed, and *Joseph Lytle*, and also to recover and receive the amount
of the two judgments entered in the Prothonotary's office of *Lan-
caster* county, in the name of said *Henry Share*, and against
*John Hiestand*, and *William J. Parker*, which two judgments
were appealed by *John Hiestand*, and in default of payment there-
of to have, use and take all lawful ways and means in my name or
otherwise, for the recovery thereof by attachment, or otherwise;
and on receipt thereof to make, seal and deliver requittances or
other sufficient discharges for the same for me and in my name,
and to do all lawful acts and things whatsoever concerning the
premises as fully in every respect as I myself might or could do
if I were personally present, and an attorney or attorneys under
him for the purpose to make, and at his pleasure to revoke, hereby
ratifying, allowing and confirming all and whatsoever my said at-
torney shall in my name lawfully do or cause to be done in and
about the premises, by virtue of these presents, hereby revoking all
former letters of attorney by me given, so far as respects the col-
lecting of the above mentioned debt and judgment.    Witness my
hand and seal this twelfth day of May, one thousand eight hun-
dred and twenty-one."    HENRY SHARE, [L.s.]
Sealed and Delivered ?  George Mathiot,
    in presence of   {  William Child.
*William Childs*, the scrivener who drew this power of attorney,
who was a subscribing witness, and proved its execution, was ex-
amined as a witness, and gave testimony of which the following is
the substance.  *John Pedan*, *Henry Share*, *James Mehaffy*, and
*James Duffy*, had made a large purchase from Mrs. *Frances
Evans*, and after paying the first instalment, gave their bond for
about twenty-four thousand dollars, with three sureties, *Joseph
Lytle*, *George Snyder* and *Henry Cassel*.  It was understood
that *Joseph Lytle*, was surety for *Pedan*, *Snyder* and *Cassel* for
*Mehaffy* and *Duffy*.  *Share* gave no security.  After several
payments, Mrs. *Evans* sued the bond, and got a judgment against
all except *Mehaffy*, on whom, by the direction of Mrs. *Evans*,
the writ was not served.  The defendants made a settlement to as-
certain how much, as between themselves, each was to pay:  On
that settlement, it was ascertained that *John Pedan* was deficient
three thousand six hundred and eighteen dollars and seventy-one
cents.  *John Pedan* and *Joseph Lytle*, gave *James Mehaffy* and

*James Duffy*, a bond to indemnify them for any money they might have to pay for *Pedan*, on the bond to *Mrs. Evans*. A copy of this bond, in the hand writing of *Mehaffy*, (who after notice to produce the original refused to do so,) was given in evidence, and it was also proved that to indemnify *Lytle*, as his surety, *Pedan* had confessed judgment to *Lytle*, in *Dauphin* county.

The plaintiff showed that *Henry Share's* land was levied on and sold by *Mrs. Evans*, for $16000, out of which she received the sum of nine thousand three hundred and twenty-two dollars and forty-three cents.

The witness proved that all the circumstances of this transaction had been explained by *Share* to *Hains*, and that an offer had been made on a former occasion, to transfer his claim to *Hains*, which was then declined. That on the 12th of May, 1831, (*Share*, being pressed and arrested by *Hains*,) *Share* and *Hains* desired him to draw the instrument given in evidence, to which he was a witness. He stated that the name of *Mehaffy*, was only mentioned in relating the whole transaction that it was this claim, arising from the payment to *Mrs. Evans* for *Pedan*, by the sale of *Share's* land, which was to he transferred to *Hains*, but that it was *Pedan* and *Lytle*, who were spoken of as liable to pay it; and all the circumstances were minutely detailed to show that the claim was good. It was proved that *Pedan* was insolvent, and dead.

The plaintiff shewed that *Henry Hains*, had been indorser for *Henry Share*, and had been compelled to pay for him large sums of money, (exceeding the amount claimed in this suit,) before the assignment by *Share* to *Hains*.

The suit was brought to recover from *James Mehaffy* his proportion of the money levied from *Share*, and which ought to have been paid by *Pedan*, and for which the others were bound to contribute to *Share* on *Pedan's* failure.

The power of attorney from *Share* to *Hains*, the evidence given by *Childs*, the subscribing witness, the copy of the bond of indemnity of *John Pedan* and *Joseph Lytle*, to *James Mehaffy* and *James Duffy*, the notes drawn by *Share* and indorsed by *Hains*, which he was compelled to pay, the record of the suit of *Frances Evans* against *Pedan*, *Mehaffy*, *Duffy*, *Share*, *Cassel*, *Snyder* and *Lytle*, were objected to by the defendant, and formed several bills of exception, which were taken in the cause.

The defendant offered in evidence the record of a suit brought by *Henry Share*, for the use of *Henry Hains* against *Joseph Lytle*, for the same claim now in suit, and in which the plaintiff was non-suited. Also the record of sundry mortgages and judgments existing against *Henry Share*, at the time he assigned his claim against *Henry Hains*; also the record of a judgment of *Christian*

*Becker* against *Matthias Rank* and *Henry Share*, to August term, 1815, and the scire facias thereon to *April term*, 1818, and the subsequent proceedings in the Supreme Court, see *Rank* v. *Becker*, 13 *Serg. & Rawle*, 41.   Also the record of a suit by *Henry Share*, for *Henry Hains* against *James Mehaffy*, in the Circuit Court of *Lancaster* county, which had been brought in the District Court to September term, 1818, to each of which the plaintiff objected, the court sustained these objections and the rejection of these records formed several other bills of exception.

The following entry was made on the record of the *scire facias* issued to August term, 1819, on the judgment of *Frances Evans*, against *Pedan* and others:

"June 26th, 1821, on motion of *Mr. Buchanan*, on behalf of *Joseph Lytle*, who is a surety in the bond upon which this judgment was obtained, the court granted a rule to shew cause why he should not be substituted in the place of the plaintiff, and by means of this judgment, receive the sum of $1000, together with interest from the 18th of August, 1818, out of the proceeds of the sale o the real estate of *Henry Share*, who is a principal in the said bond and judgment, the said *Joseph Lytle*, having paid to the plaintiff upon the said judgment the said sum of $1000 on the said 15th of August, 1818, as per receipt of that date."

*Mrs. Evans* was offered as a witness by the plaintiff, but being objected to by the defendant, was withdrawn.   The defendant had on the 13th day of June, 1827, taken a rule on the plaintiff's attorney, to file his warrant of attorney, and the warrant was filed the 9th of May, 1829.

The defendant requested the court to charge the jury on the following points, and file the charge of record:

1. That before the plaintiff can recover in this case, he must prove, by legal and competent proof, that *James Mehaffy* was indebted to *Henry Share*, for money advanced, &c. by *Share* for him, *Mehaffy*, and at his request.   That *Henry Share* considered it so, and intended to enforce the said claim against the said *James Mehaffy*, and actually assigned and transferred it to the present plaintiff, *Henry Hains*.

2. That *Henry Hains* the plaintiff, cannot recover in this suit, without proving an assignment or transfer of *Share's* claim against *Mehaffy*, (if any he had) to him, *Hains*, either in writing, or by parol.

3. That the instrument of writing, of the 12th of May, 1821, referred to in the pleadings, contains no such transfer, and is no authority to maintain this suit.   That there is no proof of any mistake of the scrivener, in drawing said instrument of writing.   Nor has the plaintiff given any proof of any parol transfer in this case

47

and that consequently on the issue formed, the jury must find for defendant.

The court charged the jury as follows:

"This is an action of assumpsit, brought by *Henry Hains,* junior, in the name of *Henry Share,* for the use of the said *Henry Hains,* to recover of *James Mehaffy* moneys, which it is alleged *Henry Share* advanced, paid, laid out and expended for the said *Mehaffy,* at his special instance and request, &c.

You will first enquire whether *James Mehaffy* was indebted to *Henry Share* on such account or not, at the time of commencing this suit.

Next whether *Henry Hains* had a right, and authority from *Henry Share* to bring this suit, and to enforce payment from *Mehaffy.*

If you should find that *James Mehaffy,* was indebted to *Henry Share,* for money paid, advanced, &c. by the said *Henry Share,* for *James Mehaffy:* And again, that this claim was assigned by *Share* to *Hains,* it will be your duty to ascertain and fix the amount of damages, or money—that the defendant ought to pay the plaintiff.

With respect to the first point, you have it in evidence, that *Henry Share, James Mehaffy, James Duffy* and *John Pedan,* as principals, and *Henry Cassel, George Snyder* and *Joseph Lytle,* as sureties, on the 6th of April, 1813, joined in executing and delivering an obligation to *Mrs. Frances Evans* for $48,581 25, conditioned for the payment of $24,290 62½ to *Mrs Evans,* on the first of April, 1814.

A considerable portion of this obligation, appears to have been paid, and probably by the several principal obligors in their proper proportions, previously to the 19th of July, 1815, when it appears from a bond of indemnity, given by *John Pedan* and *Joseph Lytle,* to *James Duffy* and *James Mehaffy,* a balance was due on this bond, and *John Pedan's* one-fourth of the sum due on it, amounted to $3,616 70½. In the course of two or three months after this, *Mrs. Evans* commenced a suit upon this bond, to November term, 1815. The summons in commencing this suit, by direction of *Mrs. Evans,* was not served on *James Mehaffy,* although he was joined with the others in the summons, but was served on the others, as appears by the return of the sheriff, and judgment by default was entered on the 22d of January following, 1816.

At this time, less than $9000 appears to have been due on the bond, and therefore most likely something had been paid upon it to *Mrs. Evans,* after the 19th of July, preceding. It may be that *James Mehaffy,* in that interim paid $3616,70½ his own fourth of the balance due on the 19th of July, 1815, and that may be the rea-

son why *Mrs. Evans* directed the summons not to be served on *Mehaffy*, expecting that if she had a judgment against the other three, she might be able to compel each to pay his proper proportion. If this however were her motive for giving such direction, she did not succeed in it: for the whole balance due upon this bond, or the judgment obtained upon it, $9,322 43, was recovered from *Henry Share*, by a levy upon, and sale of his real estate. . .

The circumstances of the writ of summons not being served upon *Mehaffy*, is no evidence, as has been contended, of *Mehaffy* having ever been discharged or released by *Henry Share*, from his liability to *Share*, as a principal co-obligor. The omission of the sheriff, to serve the writ on *Mehaffy*, was in obedience to the act and direction of *Mrs. Evans*, over whom *Henry Share*, had no control, and with which it does not appear he had any concern.

It is manifest and not contradicted, that $9322 43, the balance of the debt and interest due on this obligation beside costs of suit, were paid by *Henry Share*, as a principal co-obligor, or out of the money arising from the sale of his real estate, which is the same thing."

Answer of the court on the points submitted by defendant's counsel:

1. "To entitle the plaintiff to recover in this case upon the issue that is formed, it is necessary that he should have proved that *James Mehaffy* the defendant was indebted to *Henry Share* for money advanced, &c. by *Share* for *Mehaffy*, and at his request. This request, however, need not be an express request, because, as between joint principal's co-obligers, when one of them pays more than his proportion, it will be considered in law as money paid and advanced for the others, and at their request; the law in this case implies the request, as also a promise by the others respectively to reimburse him so paying, their respective proportions, so that upon a final adjustment of the whole, each one shall have paid his proportion according to their respective rights in the obligation as originally concocted. To enable *Henry Hains* to enforce this claim against *James Mehaffy*, and to sue him for it, it was not necessary that *Henry Share* should have expressly authorized *Hains* to sue *Mehaffy*. If he actually assigned the claim to him for a valuable consideration, or in payment of, or as collateral security for a subsisting debt, owing by *Share* to *Hains*, it will and ought to be implied therefrom that he intended that *Hains* should sue *Mehaffy*, if he did not pay without. Without assignment of the claim by *Share* to *Hains*, or an express authority given by *Share* to *Hains*, he would have no right to sue *Mehaffy*. But I repeat, if there were an assignment of this claim, either in writing or by

word of mouth, by *Henry Share* to *Henry Hains*, to secure to *Hains* the payment of a debt which *Share* owed, and in consideration of which too *Share* obtained his discharge from arrest, and the prosecution of a suit of *Hains;* without naming *Mehaffy* in the assignment, or at the time of making it, *Hains* would thereby acquire an irrevocable authority to sue *Mehaffy*, or any person who was liable, and bound to pay it, unless there was an express stipulation or understanding between *Share* and *Hains* to the contrary. Neither is it material whether *Share* considered *Mehaffy* liable to pay this claim or not, if he never released him from it—of which there is no evidence—an unqualified assignment of it would give an authority to sue *Mehaffy* for it, if he were liable, without naming him.

2. *Henry Hains* cannot recover in this suit, unless you are satisfied from the evidence given, that *Henry Share* assigned the claim for which this suit is brought, to *Henry Hains;* but a written or verbal assignment or transfer, will be sufficient to enable him to sue for it, if good.

3. The instrument of writing of the 12th of May, 1821, referred to in the pleadings does not of itself contain an assignment of a claim against *James Mehaffy* by name; nor any authority to sue him. But the nature and origin of the debt or claim which is thereby assigned to *Hains* against *John Pedan* and *Joseph Lytle* is not described nor particularly designated; and *William Child*, Esq., a witness on the part of the plaintiff, who drew that instrument of writing, and is a subscribing witness to it, has testified and repeated it more than once, that the claim now in suit was the same that was mentioned at the time of drawing and executing that instrument, and an assurance given by *Share* to *Hains*, that *Pedan* and *Lytle* were liable to pay it, and that he described it merely as a debt against them. It will be your duty to take the testimony of *Childs* in this behalf into your consideration in connection with that instrument of writing, inasmuch as it goes to explain the nature of the claim or debt which was intended *to be assigned*, which is omitted in the writing; and if you should believe from this instrument of writing, and from the testimony of *William Childs*, that the claim which this suit is brought to recover, was intended to be assigned by *Share* to *Hains*, and this is a matter which you ought to decide according to what you shall believe was the intention of the parties at the time, it was not necessary that the name of *Mehaffy* should have been mentioned at that time, to give authority to *Hains* to sue him. It was sufficient if he were liable for the claim which was actually, and intended to be assigned. It does not appear from the testimony that the scrivener committed any mistake; but it seems, according to his testimony, that he omitted,

'(Mehaffy *v.* Share.)

or has not described the nature and origin of the claim in this case, which he says was the same that was assigned. The court cannot say that no evidence has been given of a transfer of the claim in this suit, because what has been testified to by *Squire Childs* may, and ought it credited by you, to be considered as part of the assignment, and if so, will embrace the claim in this suit, and would give *Hains* a right to sue for it, if well founded."

The verdict of the jury was for the plaintiff, and the damages assessed $2546.

On the 30th of April, 1831, the defendant moved for a new trial, for the following reasons, to wit:

1. The court erred in permitting the jury to be sworn, and proceeding to the trial of the cause in the then situation of the pleadings, and especially after a positive affidavit of the death of *Henry Share*, and a suggestion of this fact on the record; contrary to the wish of defendant's counsel, and when they in writing objected to the same.

2. The court erred in permitting the plaintiff to go into evidence of the merits of his case, so as to show what sum he was entitled to recover on a hearing on the merits; and instructing the jury when they were sent out that they were, in case they found for the plaintiff on the issue, to assess his damages.

3. The court erred in admitting the evidence as testified to by *William Child*, Esq.

4. The court erred in admitting in evidence the paper dated the 12th of May, 1821, purporting to be a letter of attorney from *Henry Share* to *Henry Hains*, junior.

5. The court erred in admitting in evidence the copy of the bond of indemnity, purporting to have been executed by *John Pedan* and *Joseph Lytle* to *James Mehaffy* and *James Duffy*, and dated 19th July, 1815.

6. The court erred in admitting in evidence the note drawn by *Henry Share*, and indorsed by *Henry Hains*, and *Henry Hains*, junior, payable to *Henry Hains*, junior, dated the 17th of February, 1819, payable in sixty days, at the office of discount and deposit at Lancaster, and paid off by *Henry Hains*, junior, after protest, on the 28th of April, 1819, $2,708 48. And also the note drawn by *Henry Share*, and indorsed by *Henry Cassel*, *Henry Hains*, junior, and *Christian Miller*, dated the 17th of August, 1819, and payable to the order of *Henry Cassel*, in sixty days, at the Farmers' Bank of Lancaster, and paid off by *Henry Hains*, junior, after protest, on the 5th of September, 1820, $2,982 76, together with the protests and receipts accompanying the same as given in evidence.

7. The court erred in admitting in evidence the record of the

(Mehaffy *v.* Share.)

suit of *Frances Evans, John Pedan, James Mehaffy, James Duffy, Henry Share, Henry Cassel, George Snyder* and *Joseph Lytle,* brought to November term, 1815, No. 349; together with the various proceedings had in the same suit, and as set forth on the said record as read, and the *scire facias* thereon to August term, 1819, No. 132. The *fi. fa.* to November term, 1819, No. 46, and levy made thereon; the *venditioni exponas* to January term, 1820, No. 52; the *alias venditioni exponas* to April term, 1820, No. 103; the *pluries venditioni exponas* to November term, 1820, No. 31; together with the various proceedings had on the said several writs, and in the court, as set forth in the record of the same as read; and also the *alias fi fa* to January term, 1822, No. 132, with the several proceedings had on the same, and in the court as set forth in the record of the same as read.

8. The court erred in over-ruling the testimony offered by defendant, viz: the record of the suit brought by *Henry Share* for the use of *Henry Hains,* junior, and *Joseph Lytle,* in the Circuit Court of *Lancaster* county, of September term, 1822, and carried to the Supreme Court of May term, 1827, No. 67.

9. The court erred in over-ruling the testimony offered by defendant, viz: the records of the several judgments and mortgages, owing and due by *Henry Share,* when his real estate was sold by the sheriff, as given in evidence by plaintiff, and how the proceeds of the same were applied.

10. The court erred in over-ruling the testimony offered by defendant, viz: the record of the judgment of *Christian Becker,* v. *Matthias Rank* and *Henry Share,* to August term, 1815, No. 785, and the *scire facias* thereon to April term, 1818, No. 62; and all the proceedings afterwards had thereon, as well in the Supreme Court, as afterwards in the Court of Common Pleas of *Lancaster* county, when they made distribution, as directed by the Supreme Court in 13 *Serg. & Rawle,* 41.

11. The court erred in over-ruling the testimony offered by defendant, viz: the record of the suit brought by *Henry Share* for the use of *Henry Hains* v. *James Mehaffy,* into the Circuit Court of *Lancaster* county of September term, 1828, No. 3—originally instituted in the District Court of *Lancaster* county of September term, 1822, No. 19.

12. The court erred in their direction to the jury on the first and third points propounded to them by the counsel of defendant; and in their general charge to the jury on the subject matter, and especially in instructing them that the instrument of writing of the 12th of May, 1821, authorized the bringing of the present suit, although *James Mehaffy's* name was not therein stated, and in setting forth the testimony of *William Childs* in relation thereto.

(Mchaffy *v.* Share.)

13. That the damages are unreasonable, and excessive, and contrary to law, and not warranted by the evidence in the cause..

14. That the verdict of the jury is contrary to law and the evidence in the cause.

The foregoing reason were sworn to by *James Mehaffy* as being "correct and true."

The following additional reason is assigned by the counsel of the defendant, he not being in court at the time the circumstance occurred; and not therefore being within his knowledge, but having transpired before the court, the reason is thus assigned:

That when the jury returned to the court to give in their verdict it was for the first time discovered by defendant's counsel, that they had out with them, when deliberating in the jury room, a statement and calculation in the hand writing of the senior counsel of the plaintiffs, which was not given in evidence, nor submitted to defendant's counsel, and which may have misled the jury in making up their verdict; and that a new trial ought to be granted on this account.

The counsel of the plaintiff testified that neither of them knew how the paper referred to in the last reason assigned had got to the jury. It was a calculation of the principal and interest on one of the notes which *Hains* had been compelled to pay for *Share.*

The Circuit Court over-ruled the motion for a new trial, and directed judgment to be entered on the verdict; whereupon the defendant appealed to the Supreme Court, and now assigned the same reasons for a new trial as those insisted on in the Circuit Court.

*Porter* and *Jenkins* for the appellant,

Argued that the issue presents a single point, a fact affirmed on the one side, and denied on the other. That point was, that *Hains* had power to sue the claim of *Share* against the defendant. This was affirmed by the plaintiff, and denied by the defendant, and all the evidence which went to any other was irrelevant, and should not have been received. As to this point, they denied that there was any evidence to establish it. The power of attorney was not an assignment, but a mere power, which must receive a strict construction, and certainly did not confer the right to institute this suit, for it designates the debts, as to which authority is given to sue; and this is not among them, *expressio unius est exclusio alterius.* It was not his intention to transfer any claim against *Mehaffy*, as he was ignorant of the fact that he had such claim, and it did not appear that it was not his intention to release *Mehaffy.*

Nor did the plaintiff *Hains* establish a parol transfer; so far from it it was proved that on a former occasion an offer was made to trans-

(Mchaffy *v.* Share.)

fer this claim, and it was then refused. Take, then, the writing and
the testimony of *Childs* separately, and the transfer is not estab-
lished; but the attempt is made to make it out by connecting them
together, in violation of the rule which forbids the introduction of
parol evidence, to contradict or vary a written instrument. The
only exceptions to this rule are in cases of fraud, mistake or trust,
neither of which existed here.

They contended that the court erred in ordering the cause on
when no issue had been joined on the merits, and proof was given
of the death of the plaintiff. The case they argued did not fall
within the act of the 23d April, 1829, *Pamphlet Laws*, 355, up-
on which the court decided this point. This error led the court to
others in permitting evidence as to the merits to go to the jury, and
instructing them that upon finding in favor of the plaintiff, it was
their duty to ascertain the amount due, when the issue present-
ed the naked question as to the right to sue.

The court they contended were in error in not receiving evi-
dence of the mortgages, and judgments against *Hains* existing at
the time of the alleged assignment; for if there were a right of re-
covery against the defendant, that right should pass to these credit-
ors. If they had not a lien upon the claim, still, as the recovery of
their debts had been prevented by the judgment of *Mrs. Evans*,
they had a right by substitution to come in to recover the fund to
which *Share* obtained a claim by the payment of that judgment.

The damages they contended were erroneously calculated; for at
all events, the record of *Mrs. Evans'* judgment showed a payment
of $1000, which ought to have been passed to the credit of *Me-
haffy.*

It was important to preserve the trial by jury in its purity;
here a paper, which had been objected to, and which, on that ob-
jection, the court had refused to permit to be sent out, was yet in
some way got to the jury. It may have had an influence upon the
jury; but this is not so much to be regarded as the importance of
the principle of preventing improper practices upon a jury. They
cited 2 *Stark. Ev.*, 80, 81. *Gilb. Ev.*, 4, 5. *Peak.* 168, 169.
*Mumford* v. *McPherson,* 1 *Johns. R.* 413. *Share* v. *Anderson,*
7 *Serg. & Rawle,* 433. 1 *John Ch. R.* 273, 282.

*Montgomery* (with whom was *Hopkins,* whom the court declin-
ed to hear,) for the appellee.

The objection to swearing the jury is met by the express terms
of the act of assembly referred to.

The point in issue it is true was whether *Hains* had authority
to sue, but it does not lay in the mouth of the defendant to object
that there was no plea to the merits; he might have put in such plea,

(Mehaffy v. Share.)

but he chose to rest his defence on the issue joined. The replication of the plaintiff contains an averment of the transfer to *Hains*, and of the mistake in not making it a part of the written power. If the defendant considered this replication objectionable, he should have demurred to it, instead of which he joined issue upon it, and cannot now complain that evidence was received to sustain it.

If an issue in fact be joined, upon the replication to a plea in abatement, and found for the plaintiff, the jury should assess the damages, and the judgment is peremptory for the delay, *quod recuperet*, and not *quod respondeat*. 1 *Chit. Pl.* 455. 2 *Sanders*, 211, note 3. If the jury do not assess the damages, a *venire de novo* is awarded. Upon a demurrer in the case of a plea in abatement there must be a *respondeat ouster*. 3 *Wilson Rep.*, 367. 2 *Arch. Prac.* 3, 4. *Wright* v. *Holly*, 3 *Wendel. Rep.*, 258. *Wallace Rep.* 57, 8. The defendant was permitted to give any evidence which went to the merits of the claim. It was not pretended on the trial that the $1000 had been paid by *Mehaffy*, nor was any receipt produced, or other evidence of payment.

The objection as to the evidence going to affect a written instrument is wholly untenable. In the first place the evidence went to sustain the issue, for by that it was open to the plaintiff to prove an authority either in writing or by parol, and in the second place the evidence did not contradict or vary the instrument, but explained a latent ambiguity by ascertaining the nature of the debt assigned. The instrument given in evidence was in form a power of attorney, but in substance, which alone is regarded, it is an assignment. It assigns the claim against *Pedan*, which by parol evidence was ascertained to be a claim for contribution, and such assignment would carry the remedy against *Mehaffy*, as well as every other remedy.

The rule that a bond may not be given in evidence in assumpsit does not prevail here, so as to exclude the bond of indemnity to *Mehaffy* and *Duffy*. It went to ascertain the extent of *Pedan's* default. *Thompson* v. *White*, 1 *Dall.* 428. *Charles* v. *Scott*, 1 *Serg. & Rawle*, 294.

It cannot be pretended that the judgment creditors, or creditors by mortgage of *Share* had a lien on the claim, which was a *chose in action*; there is no equity which would vest in them this right; nor do they make any such claim. No plea or issue was put in, which could raise the question, and it does not lay in the mouth of *Mehaffy* to interpose this objection.

The paper which was out with the jury was altogether immaterial, and had no effect upon their verdict.

The opinion of the court was delivered by

HUSTON, J. - The defendant appeared, prayed oyer of the writ,
48

(Mehaffy *v.* Share.)

and of *Henry Hains'* power to sue, and special imparlance; and a rule was granted on plaintiff's attorney to file his warrant of attorney, and he filed it.    This may seem strange to those in other states, but in fact occurs so seldom, that many lawyers in full practice, for a long time, never had, and never have been called on to file a warrant of attorney.    The client speaks, or writes to the lawyer, and gives him a fee, and he attends to the matter.    After oyer, defendant pleaded in abatement.

A declaration was filed, and a rule to plead and second rule; the court ordered the plaintiff to reply to the plea in abatement; and he did so, and issue was joined on the right of *Henry Hains* to bring this suit.    The plaintiff's replication to the plea was rather argumentative; but there was no demurrer; the defendant chose to go to trial before a jury.

The jury gave a verdict for the plaintiff, and assessed the damages.    There are many reasons filed why a new trial should be granted, and not a few of them, such as ought not to have been presented to any court.    It is usual to bring a suit as this is brought, in the name of one person, for the use of another.    Since the last term *Henry Share* had died, and formerly, by the decisions of this court, the suit could not have proceeded until his administrators were substituted; but an act of assembly, of the 23d of April, 1829, had in plain terms directed that the suit should proceed notwithstanding the death of the nominal plaintiff.    It is a wise and beneficial act.    *Henry Share* did not institute the suit, could not have discontinued it, and was not liable for costs.    He was a mere formal part of the machinery of a suit.    The judge proceeded with the trial, although his death was proved; and this is the first ground assigned for a new trial; and affords one of the most striking instances of the want of reflection with which such motions are made, and reasons for new trials are sometimes filed.    We are called on to say the above act is in force.

It has been settled that in certain cases where issue is joined on a plea in abatement, the jury, if they find for the plaintiff, must assess the damages.    The court so instructed the jury in this case, and permitted evidence of the amount to go to the jury; this is the next reason assigned for a new trial.    The cases cited prove the law to be as stated by the judge, and no authority or *dictum* to the contrary has been produced; and it is admitted, that if *Hains* had a right to sue, there was nothing to do but calculate the amount.    Why this decision of the judge was brought before us I know not.

I shall consider the 3d and 4th reasons together, on the admission in evidence of the assignment or power of attorney, when proved by the subscribing witness, and the admission of the evidence of *William Childs*, who drew it, and was a subscribing witness to it.

(Mehaffy *v.* Share.)

There will be no end of discussions about the admission of parol evidence, where there is also a writing between the parties; but it will, and must be admitted, as long as the attainment of justice is the object of courts. Certain general rules have been attempted to regulate this admission. It is said in many cases it is only admissible where there is mistake, fraud, or trust. Now if the whole contract is fairly and fully reduced to writing, and that writing is not attempted to be used in a different way, or for a different purpose from the meaning and contract of the parties, nobody ever would, or will wish to introduce *parol* evidence. This rule, then, proves nothing.

Another expression has obtained some currency, viz: a contract cannot be partly in writing, and partly in *parol.* This differs from the former; it is worse than useless; it is incorrect, wherever there has been fraud, or mistake; for when the fraud is developed or the mistake corrected, if not totally set aside, it is carried into effect according to the written contract, corrected by *parol* evidence, and does always consist of both written and parol, where any part of the bargain is put in writing.

It frequently happens that the parties, and the scrivener, understand perfectly the matters which are the subject of the contract, and supposing that there will be no dispute, or that every body will know all that they know, the very subject-matter of the contract is described so vaguely, or indistinctly, as that a stranger cannot comprehend with certainty what was intended to be effected by the agreement. A familiar instance of this is an agreement to sell a house in *Lancaster*, and the seller has more than one house there. Equal, or greater uncertainty may arise on an agreement to transfer a claim. In this case, as the parties and the scrivener knew that *Mehaffy* had a bond of indemnity from *Lytle*, they seem all to have considered that *Share*, or his assignee, might pass over *Mehaffy*, and at once recover from *Lytle.* They do not seem to have conceived that *Lytle* could only be reached through *Mehaffy*, or rather thought that as *Mehaffy* was ultimately safe, they need not name him. The scrivener, however, proved distinctly that the whole matter was explained; that *Share* had paid more than his proportion, and *Pedan* much less; that thus *Share* was entitled to contribution from his co-obligors; to be sure, it was added that a particular co-obliger was indemnified; and the mistake consisted in supposing that *Share* had immediate redress on this indemnity. It was this claim for paying more than his proportion; for paying what *Mehaffy* ought to have paid, which was alleged to be assigned, and which the jury have found was assigned; and the explanation by the scrivener was necessary to the attainment of justice, because it was necessary to understand the subject-matter to which the power irrevocable applied.

(Mehaffy v. Share.)

It is next objected that the power of attorney, after being proved, was permitted to go to the jury; it did not go until after *Childs* was examined, and then went because the evidence, being partly written and partly *parol*, the jury alone could decide on its effect.

5th and 7th reasons.—The bond of indemnity from *Pedan* and *Lytle* to *Mehaffy* was also objected to, and permitted to go to the jury.    The witness had stated that shortly before *Mrs. Evans* had sued on her bond, the defendants met and settled, to ascertain, as between themselves, how much of the remaining debt to *Mrs. Evans* each ought to pay.   At this settlement it appeared that *Pedan* was most in arrear with his payments, and that the witness then drew the bond from *Pedan* with *Lytle* as his security, to *Mehaffy* and *Duffy* to indemnify them, in case they should be compelled to pay the whole or part of what *Pedan* ought to pay.    The bond was given in evidence to show the amount which on settlement all parties agreed was due by *Pedan*, in which point of view it was clearly evidence.    This very point was decided by this court, in *Charles* v. *Scott*, 1 *Serg. & Rawle*, 294, and is the ordinary practice where an action of assumpsit can, or must be brought, and the amount appears by a writing under seal, or a judgment; it is always done where a surety, or co-obligor pays off the bond, and sues the principal or the co-obligor, to recover from him.   The bond or judgment is shown to prove the amount paid.

As soon as it is decided that the jury in this cause must find the amount due the plaintiff from this defendant, (in case they find for the plaintiff,) it follows that evidence to prove that *Share* was indebted to *Hains*, and how much, is admissible and necessary.

As to the evidence offered by the defendants: That *Hains* was mistaken in first sueing *Lytle*, that it was decided such suit did not lie, and that he was non-suited; this was no reason why he ought not to recover in this suit against *Mehaffy*.

The next two offers were the same; the one was to show all the judgments against *Henry Share* and the other to show a particular one.    This claim against *Mehaffy* was not bound by any judgment; it was a chose in action, and could not have been levied on.   But it was said, that as *Share's* land, or the proceeds of it, had been taken to pay money which *Pedan* ought to have paid, or which the other joint obligors ought to have contributed to pay, therefore the judgment creditors of *Share* ought to have been substituted in his place, and had the money recovered from *Mehaffy*, or *Pedan*. It has been decided, and may be considered settled, that a *surety* who has paid money for his principal, may have the judgment assigned, in order to levy on lands of the principal, to indemnify himself; here there was no judgment against *Mehaffy*.   Has it

(Mehaffy *v.* Share.)

ever been decided, that if one man pays money for another, any court can compel that other to assign a chose in action to indemnify him who paid? But no surety paid this money. There was, then, no surety who could ask an assignment of this judgment; *Pedan* had no property; an assignment of the judgment against him was worthless. The writ was not served on *Mehaffy;* there was no judgment against him by *Mrs. Evans,* which she could assign to any one; *Share* had nothing but a right to contribution, which he alone could sue, and the proceeds of which suit he could give like any other chose in action, to any one of his creditors. Besides, *Share, Mehaffy, Duffy* and *Pedan,* were tenants in common of the lands purchased, had given their bond for the purchase money; each was a principal; neither, simply a surety. I don't know of any case in which one so situated, who has paid more than his share, has been substituted, and has had the judgment assigned to him, to enable him to use it to collect from the others. If it were so assigned he might levy all from one; that one must have it assigned, and may levy all from another, and it may go on in a circle. A surety may levy all from the principal, or from one of the principals.

They also offered the record of a former suit by *Share* for *Hains* v. *Mehaffy,* which they say was for the same cause of action. I shall not stop to inquire whether it is, or not; it was not plead in abatement or bar; it is still open, and if there be a recovery in this, there can be none in that suit.

Next come objections to the charge of the court. I think the law was correctly stated by the court; I shall only add two authorities: in *Richardson* v. *Stewart,* 2 *Serg. & Rawle,* 84, the matter was decided: which, as the statement of the case is not given, I shall explain. *Stewart* had purchased land of *R. Neave,* and paid money, and had a clause of warranty in his deed. In the course of a long contest about the land, he became so involved as to be compelled to take the benefit of the insolvent law. In his assignment he transferred to his assignees, "a claim on *R. Neave* for the recovery of money paid him for land." The assignee, however, proceeded for the land; it was made a point that *Stewart* had not transferred any right to the land; but the court held otherwise, and the land was ultimately recovered. In *Donley* v. *Hays,* the assignment of a bond was held to amount to an assignment of such interest in a mortgage to secure that and other bonds, as corresponded to the amount of the bond, and the assignment of the bond was a transfer of the right to the sum secured, and passed all the remedies and all the securities which the assignor had for that debt; and this is true where there is no express agreement to the contrary. 17 *Serg. & Rawle,* 400.

As to the damages; there is no ground for a new trial on this account

(Mehaffy *v.* Share.)

—to remove all doubt as to whether *Pedan* had paid any money after the settlement between the parties, the plaintiff called *Mrs. Evans* to give testimony on this matter; the defendant objected to her, and plaintiff did not insist, and she was not examined. Now if counsel will object to every thing, without reflecting on its effect, it would be strange if this court should grant them a new trial, that they might examine a witness who was in court, and offered to prove the very matter; for let it be remembered, they ask a new trial that they may examine *Mrs. Evans* on the very subject, and respecting the precise facts which she was offered to prove, and which they resisted. We perhaps ought to take it; that the object is the delay of another trial, and that in fact, that lady would give no testimony which would be in their favor.

Rogers, J.—Having been of counsel in the cause, took no part,

Judgment of the Circuit Court affirmed,