## REBER, Assignee, etc., *v.* GUNDY.

*(District Court, W. D. Pennsylvania.* May Term, 1882.)

1. JUDGMENT BY CONFESSION—COLLATERAL INPEACHMENT.

A judgment to secure the purchase money of real estate consisting of three pieces of land, entered upon a warrant to confess judgment, given about one month after the delivery to the bankrupt of a deed for one of the pieces, but simultaneously with the delivery to him of the deeds for the other two pieces, cannot be impeached, either in whole or part, as an unlawful preference by the assignee in bankruptcy to whom the real estate passed, it appearing that it was substantially one transaction, consummated when the two latter deeds were delivered and the warrant to confess the judgment was given.

2. EXECUTORS—JOINT LIABILITY.

When two executors settled a joint account, charging themselves jointly with all the assets of the estate and exhibiting a general balance in their hands, but, by a statement appended to the account, it appeared (as the fact was) that they had actually received the assets and held the proceeds individually in stated proportions, *held*, that while jointly liable to the legatees for the general balance, they were not joint debtors *inter se*, and one of them having paid the legatees more than his individual proportion, was entitled to be subrogated to the lien against the real estate of the other, which the legatees had acquired by docketing the general balance.

3. BANKRUPTCY—JUDGMENT BY CONFESSION.

A confessed judgment for a debt already fully secured by a prior valid lien against the bankrupt's real estate, to which the judgment creditor had the equitable right of subrogation, is not impeachable as a fraudulent preference under the bankrupt law, for it takes nothing from the general creditors and impairs not the value of the bankrupt's estate.

In Equity.

*J. Merrill Linn, Andrew A. Leiser,* and *Chas. S. Wolff,* for complainants.

*Andrew H. Dill, Alfred Hays,* and *Kennedy & Doty,* for respondents.

ACHESON, D. J. This case arises upon a bill in equity filed by John Reber, assignee in bankruptcy of Charles Penny, to set aside a judgment of the court of common pleas of Union county, Pennsylvania, for $5,000 in favor of John A. Gundy, the defendant in the bill, entered against the bankrupt by confession on March 13, 1878, upon a warrant of attorney dated and given March 11, 1871, within two months of the adjudication in bankruptcy. The bill charges that the judgment "was in part without any consideration, and as to the balance was for a past and antecedent consideration," and alleges it to be a fraudulent and void preference under the bankrupt law.

From the evidence the following facts appear:

The brothers, Thomas and Alexander Penny, were equal owners in common of several pieces of land in Union county. Thomas made his will July 22, 1868, constituting his brother Charles (the bankrupt) executor thereof. He directed his executor to sell his real estate, and bequeathed the proceeds. He soon died, and Charles entered upon his trust. Alexander made his will February 2, 1872, constituting as executors thereof the bankrupt and John A. Gundy, the present defendant. Alexander's will was proved, and letters testamentary issued to the executors named therein, November 16, 1874. His will directs his executors to sell his real estate, and the proceeds are bequeathed to certain named legatees.

In the fall of 1876 Charles Penny and John A. Gundy, as executors of Alexander Penny, and Charles, as executor of Thomas Penny, united in the sale of the several pieces of real estate of which their testators had died jointly seized. Tract No. 3 was sold to Thomas Church for $6,166.63, or $3,058.31 for each estate; tract No. 4 to D. D. Meyer for $2,137.50, or $1,068.75 for each estate; and tract No. 5 to D. D. Meyer for $420, or $210 for each estate. It subsequently transpired (although Gundy was then ignorant of the fact, and did not learn it until long afterwards) that Church and Meyer purchased, not for themselves, but for Charles Penny. The prices, however, seem to have been fair, and all parties in interest have acquiesced in Charles' purchase. The land passed to his assignee in bankruptcy, who, under an order of court, sold it discharged of liens, and holds the proceeds for distribution among the creditors of the bankrupt.

On the twenty-first of April, 1877, Charles Penny and John A. Gundy, as executors of Alexander Penny, deceased, joined in settling an account of their trust, charging themselves jointly with all the assets, including the testator's share of the purchase money, of tracts 3, 4, and 5. The account shows "a balance in the hands of the accountants" of $9,097.02. But at the foot of the debit side is appended a statement showing that the "total amount received by J. A. Gundy" was $3,346.61 only. And at the foot of the credit side of the account is the following statement:

"Out of the above amount J. A. Gundy paid out as follows:

| | | |
|---|---|---|
| Amount receipted for as filed, including register's fees and collateral tax, - - - - - - | $ 712 | 87½ |
| Amount not receipted for, charges, etc., - - - | 139 | 90 |
| Total amount paid out by J. A. Gundy, - - - | $ 852 | 77½ |
| Balance in hands of J. A. Gundy, - - - - | 2,493 | 83½ |
| | $3,346 | 61" |

This account was confirmed absolutely by the orphans' court of Union county, on May 26, 1877, and subsequently the court directed distribution of the balance in the hands of the accountants among the legatees. The statements from the account above referred to are shown to be truthful, and it also appears that Gundy at no time received any further assets of the estate, and that no part of the purchase money of the tracts 3, 4, and 5 ever came to his hands.

On November 26, 1877, a certified transcript from the orphans' court showing a balance of $9,097.02 to be in the hands of the accountants, and due from them jointly to the estate of Alexander Penny, was filed in the court of common pleas of Union county, and docketed as a lien against their real estate. Charles Penny was then the owner of other real estate,—besides said tracts 3, 4, and 5,—which passed to his assignee in bankruptcy. No deed for tract No. 3 was made until February 14, 1878, when the executors executed an l acknowledged a deed to Thomas Church, who, on the same day, executed and acknowledged a deed therefor to Charles Penny. The deeds for tracts Nos. 4 and 5 were not made until March 11, 1878, when the executors executed deeds therefor to D. D. Moyer, and he executed deeds to Charles Penny. On the same day (March 11, 1878) Charles Penny executed and delivered to John A. Gundy the warrant of attorney for the confession of the judgment, which is the subject of the present controversy. Prior to that date Gundy had paid to the legatees of Alexander Penny, of the balance due them under the executors' account and order of distribution, over $5,000, and he was liable to them for whatever then remained unpaid. At the time he received the warrant of attorney he gave Charles Penny the following written agreement:

"In consideration of a judgment bond for $5,000, dated March 11, A. D. 1878, executed in favor of J. A. Gundy by Charles Penny, I hereby agree to enter on record the following papers, viz.:

| | | | |
|---|---|---|---|
| Release of | Eliza G. Gundy | for A. Penny's legacy. | |
| " | James B. Stewart | " " | " |
| " | " | " T. Penny's | " |
| " | " | " J. E. Penny's | " |
| " | A. B. Fowler | " A. Penny's | " |
| " | T. P. Fowler | " " | " |
| " | A. M. Harter | " " | " |
| " | Mary Burd | " " | " |
| " | W. L. Gundy and wife | " | " |

—And to deliver to said Charles Penny a bond of indemnity for the amount of Eliza G. Gundy's legacy from T. Penny's estate; and also, within 60 days from date, either procure the following releases, or deposit, either in banks or with a justice of the peace, the amounts due them as below:

F. N. Penny,                interest due from A. Penny's legacy,   -   $239 24
F. A. Davidson and wife, ,      "      "      "      "   -       314 65
James Sweeney, amount of A. Penny's legacy,   -     -     -,      364 65
M. J. Housel, balance due      "      "   -      :    · -      53 71
J. E. Penny, balance on T. and A. Penny's legacy,   -     -       7 78

—And also pay the following claims:

"W. B. Shaffer, auditor's fee for A. Penny's estate, $25; other costs of audit on account of Alexander Penny's estate, except $2 to Charles Penny and $2 to J. A. Gundy, amounting to $12; T. P. Wagner, and prothonotary costs, (four cases,) $25.30; and the sum of $13 to any parties the said Charles Penny may direct.

"In witness whereof I have hereunto set my hand this eleventh day of March, A. D. 1878.                                             J. A. GUNDY."

There is nothing in the evidence tending to show bad faith on the part of John A. Gundy in any of the above transactions. He seems to have been somewhat careless of his own interests, and too confiding in his co-executor, but he has held fast his integrity, and certainly, outside of the bankrupt law, there is no ground for impeaching his judgment. With a trivial exception it represents moneys which the bankrupt should have paid, but which Gundy had either paid or was liable to pay for him.

In his answer to the bill the defendant denies that he knew or had reasonable cause to believe, at the time when he received the warrant to confess the judgment, that the bankrupt was insolvent, or knew that it was given in fraud or to defeat the provisions of the bankrupt law. And were this the turning point of the case, I might, under the pleadings and evidence, well pause before adopting the conclusion that the defendant had such knowledge as under the bankrupt law would avoid a security. *Grant* v. *Nat. Bank,* 97 U. S. 80.

But if such knowledge be assumed, it by no means follows that the defendant's judgment is impeachable by the assignee in bankruptcy. Nothing surely is better settled than the doctrine that such assignee takes title subject to all equities which existed against the property in the hands of the bankrupt. *Gibson* v. *Warden,* 14 Wall. 248; *Yeatman* v. *Savings Inst.* 95 U. S. 764. Now, the judgment in question, in the bulk, represents—and the parol evidence evinces that the parties thereto intended it should stand for—the purchase money of the real estate of the decedent, (Alexander Penny,) which the bankrupt had bought through Church and Moyer. So long as John A. Gundy, as executor, retained the legal title to that real estate, he had an ample security for the purchase money, available as well to the legatees as to himself. It would seem, however, that on February 14, 1878, he parted with this security so far as concerned the

tract (No. 3) sold nominally to Church; but the whole transaction touching the real estate was not closed until the execution of the conveyances by the defendant to Moyer, and by the latter to the bankrupt on March 11, 1878, presumptively at the same time when the warrant to confess judgment was delivered to the defendant. The case, then, is this: At the conclusion of the real estate transaction, the bankrupt, by means of the defendant's deeds for the tracts knocked down to Moyer, completes his title to Alexander Penny's real estate, and simultaneously gives his warrant of attorney to confess judgment in favor of the defendant,—a judgment which unquestionably was available as a security to such of the unpaid legatees of Alexander Penny as are named in the defendant's written agreement already quoted at large. The assignee in bankruptcy succeeds to this real estate, converts it into money, and proposes to hold on to the proceeds, and yet asks the court to strike down the judgment. If there is any equity in this demand I confess it is not apparent to me.

But, furthermore, I think the defendant takes an impregnable position when he claims that he was invested with the equitable right of subrogation to the assured lien which the legatees have acquired against the real estate of the bankrupt by the filing and docketing in the court of common pleas of the transcript from the orphans' court, and shows that the confessed judgment in the main represents and secures the same debt. Why may it not well stand as a valid cumulative security to the defendant, as claimed by him? Clearly, in so far as it is a mere cumulative security, the confessed judgment contravenes no provision of the bankrupt law, for it takes nothing from the creditors, and impairs not the value of the bankrupt's estate. *Sawyer* v. *Turpin*, 91 U. S. 114; *Stewart* v. *Platt*, 101 U. S. 731.

But the defendant's right of subrogation is stoutly denied, and the plaintiff produces authorities to show that, as between principal and debtor jointly liable, there can be no subrogation. *Mehaffy* v. *Share*, 2 Pen. & W. 361; *Griener's Appeal*, 2 Watts, 414; *Singizer's Appeal*, 28 Pa. St. 524. But *Watson's Appeal*, 90 Pa. St. 426, proves that the above proposition is not universally true. There it was held that joint obligors in bonds secured by mortgage are entitled, as against each other, to subrogation. And in *Lidderdale* v. *Robinson*, 12 Wheat. 594, it was decided that the principle of substitution is not confined to cases arising between surety and principal, but applies as between co-sureties. Hence, one of two joint sureties, having paid the whole debt, has been permitted to enter judgment on their obligation in the

name of the creditor, and have execution therein against his co-sureties for his proportion. *Wright* v. *Grover & Baker S. M. Co.* 82 Pa. St. 80.

Charles Penny and John A. Gundy, however, did not stand simply in the relation of joint debtors. Doubtless they had become jointly liable to the legatees for the entire balance of $9,097.02, but as between themselves they were jointly liable. Their account upon its face showed that of this balance but $2,493.82 had actually come into Gundy's hands, and that Charles Penny was personally answerable for $6,603.19. These sums were the measure of their liability *inter se*. Of the balance due the legatees, Charles Penny, in good conscience, was bound to pay the last-mentioned sum, and to indemnify Gundy from liability therefor. Unquestionably, as between the executors, Penny was under a superior obligation to pay that amount. Why, then, was not Gundy entitled to subrogation in respect to the lien entered in, the common pleas upon the certificate from the orphans' court? It is true, he did not stand strictly in the relation of a surety to Penny, but for the purposes of a subrogation he had the equitable right of a surety. *Gearhart* v. *Jordan*, 11 Pa. St. 325.

"The familiar doctrine of subrogation," says Mr. Justice Strong, in *McCormick's Adm'r* v. *Irwin*, 35 Pa. St. 117, "is that when one has been compelled to pay a debt which ought to have been paid by another, he is entitled to a cession of all the remedies which the creditor possessed against that other. To the creditor both may have been equally liable; but if, as between themselves, there is a superior obligation resting on one to pay the debt, the other, after paying it, may use the creditor's security to obtain reimbursement." It was therefore held in *Scott's Appeal*, 88 Pa. St. 173, that a partner who goes out of a partnership, and for a valuable consideration is indemnified by his partners against all debts of the firm, is entitled to subrogation to a judgment obtained against the firm and paid by him, for which, under the agreement of indemnity, he was not liable as between himself and partners.

The assignee, whose position is simply that of the bankrupt himself, has no countervailing equities to defeat the defendant's right of subrogation. The legatees have either been paid or are secured, and they do not gainsay the defendant's equitable right. I do not see that he has done anything to mislead other creditors, or of which they have any just reason to complain. Nor can laches fairly be imputed to him. It was, indeed, urged at the argument that he had not fully complied with the terms of his agreement of March 11,

1878. But to this suggestion there are several answers. Nothing of the kind is alleged in the bill, and the evidence was not directed to the inquiry whether the defendant was thus in default, and the facts in this regard are not sufficiently clear. But if in default, it is not shown that the bankrupt or his estate has sustained any injury thereby; and, finally, the appropriate remedy for such injury is an action at law.

Upon the whole I have reached the conclusion that the substantial justice of the case is with the defendant, and that the plaintiff has failed to establish any ground for equitable relief. This court, sitting in bankruptcy, will, of course, see to it that the defendant makes no inequitable use of his cumulative securities.

Let a decree be drawn dismissing the plaintiff's bill, with costs, to be paid out of the bankrupt's estate.