. Tilghman C. J.
This is an ejectment for a tract of land in Huntingdon county, in which the plaintiff obtained a verdict and judgment in the Court of Common Pleas. A bill of exceptions was taken by the defendant, on the Court’s rejecting evidence to prove what a certain R. Smith had sworn on a former trial,- between the parties to this suit. This point has not been pressed in the argument before us, nor do I think that the exception can be maintained; because R. *85 Smith was living, and for any thing that appeared, within fhe jurisdiction of the Court. Under these circumstances, evidence of what he formerly swore, was not admissible. He should either have been brought to Court to give testimony, or his deposition should have been taken, under a rule of Court, as usual. The whole evidence given in the cause, together with the charge of the Court, is placed on the record, and it appears, that the Court were requested by the counsel for the defendant, to give their opinion on twelve points. The whole charge was excepted to, but the plaintiff in error has reduced his exceptions to seven points. Before these are considered, it is necessary to give a sketch of the material parts of the evidence.
Both plaintiff and defendant claimed under Richard Heaves, senior and junior, who were owners of the tract in dispute, designated by the No. 17, arid of an adjoining tract, No. 16. In the month of August, 1793, the plaintiff, who lived in Huntingdon county, set out for Philadelphia, with a view of purchasing one of these tracts, and his neighbour, the defendant, having heard of it, despatched his son, John Richardson, for the same purpose, who arrived at Philadelphia before the plaintiff, and made a contract with the Heaves’s for a tract described in a written receipt for part of the purchase money, bearing date the" 19th August, 1793. There is very little doubt but the intent of Richardson was, to purchase No. 17, but the receipt is expressed in terms which render it uncertain, which tract the Heaves’s intended to sell, and this uncertainty is increased, by the circumstance of their having delivered to John Richardson the draft for No. 16. The plaintiff who arrived in Philadelphia after Richardson’s contract was concluded, finding that Richardson had taken the draft for No. 16, and conceiving that No. 17 was unsold, purchased it of the Heaves’s and afterwards received from them a deed of conveyance. The defendant alleged, that the plaintiff well knew that No. 17 was the tract which he intended to purchase, and fraudulently endeavoured to avail himself of the mistake made by the Heaves’s, in delivering the wrong draft, and of the confused manner in which the land was described in the written receipt. This unfortunate contest has been the ruin of both parties. Each being in possession of part of the tract No. 17, cross ejectments have been brought, and verdicts have .gone sometimes in favour of one, and some. *86 times of the other. In 1803, Richardson recovered against Stewart. Upon which ' Stezvart accepted a lease" for a year ^ ^ part recovered against him, from John Haldeman who had purchased Richardson's title. Stewart agreed to pay to Haldeman, one-third of the crop then growing on the demised premises, and to deliver them up at the end of a year. The lease was in writing. And there was parol evidence of Stewards having said, that he would give no more trouble. Haldeman paid Richardson 100/. in part of the purchase money, but no release or conveyance of any kind was taken, or required from Stewart, nor was any discontinuance entered of an ejectment then depending, for another-part of the tract No. 17, in which Stezvart was plaintiff, and Richardson defendant. Matters remained in this situation till the year 1807, when Stezvart petitioned for the benefit of the insolvent law, made a general assignment of his property, for the benefit of his creditors, and was discharged according to law. From that time the ejectment in which he was plaintiff, has been prosecuted, as is alleged, for the benefit of his creditors.
Besides the particular points in which the Court delivered their opinion, the plaintiff.has, assigned one error, which goes to the whole charge. It is this. The associate judges before whom the cause was tried (the president not sitting, because he had been formerly engaged as counsel) told the jury, “ that if they thought their opinion of weight, they would attend to it, but that it was not the opinion of a legal Court, nor “ did they give it as that of a Court informed in points of law.” Now although modesty is commendable in all men, and in none more than in judges, yet it is essential, that the opinion of the Court, when delivered on a matter of law, is to be taken as law. Otherwise an irreparable injury may be done to the party in whose favour the opinion is given. He can take no exception, because the opinion is with him. But if the jury are told, that they are to regard or disregard this opinion at their discretion, the law may be decided against him without redress, because no writ of error lies on the verdiet of a jury; whereas, had the opinion of the Court been against him, he might have taken an exception. It is impose sible, therefore, to give the jury the license which was given in this case without transferring questions of law to the wrong tribunal, and thus destroying the system of our jurisprudence, by which an appeal to a higher tribunal was- in* *87 tended to be secured to the party against whom the Court decided. ■ For this reason alone we are bound to reverse the' judgment, but as the cause is to go to another trial, it is necessary to express our opinion on the other exceptions.
1. The point proposed to the Court was, that land being-described in a contract by metes and bounds, it is not in the power of the grantor to defeat the contract. The Court declared, that in this case, the jury were to decide what land was the subject of the contract. As applied to the present .case, the law was laid down properly; for the land was described by references to matters not contained in the writing, and which could only be made to appear by parol evidence. The description is a tract of land “ between Sandham's claim “ and lands occupied by the widow Ramsay, containing 393J M acres.” The lying “ between Sandham's claim and the “ widow Ramsay” applies best to the tract No. 17, but the quantity of acres does not answer to No. 17, which contains 481 acres, but to No. 16. There is another part of Heaves's receipt, which applies better to No. 16 than 17. They agree to refund the 50 dollars paid by Richardson, if it should turn out that they could not clear the land of Sandham's claim. Now, that claim interfered very much with No. 16, but very little with No. 17. On the whole, it was uncertain on the face of the writing, which tract was intended to be sold, so that the Court could not decide it without calling in the aid of the jury.
2. The counsel for the defendant contended, that several verdicts having passed, in favour of Richardson, and Stewart having accepted a lease of part of the land, and promised to give no more trouble, his assignees ought not to be permitted to recover against Haldeman (the real defendant) who had paid the purchase money on the faith of Stewart's promise. These, no doubt, were weighty considerations, but they do not appear to be absolutely conclusive against the recovery in in this ejectment. Without expressing an opinion on which side the evidence preponderates, I will mention some circumstances alleged by the plaintiff well worthy of serious consideration. Haldeman purchased a law suit with his eyes open, for he bought while cross suits were depending, and before Stewart had taken any lease, or made any promise. The land for which the lease was taken, was not that which is claimed in this suit. _ Stewart was in distress when he took the lease; *88 he received no,adequate consideration for a release of his right; he executed no release; he gave no kind of conveyance > would be unreasonable, therefore, to bind him any further than he bound himself by the lease, especially as the money which Haldeman'h&s paid, bears no proportion to the value of the land. If Haldeman has been injured by the payment of money on the faith of Stewart's promise, this may be a good reasoD for demanding an indemnity, but not for taking the whole tract of land. Finally, it is alleged by the plaintiff, that at the time when he intended to give up th§ contest, he' supposed that he had very little chance of success ; but was afterwards induced to have better hopes, by discovering, that John Richardson, the principal witness for the defendant, was interested in the cause, and unworthy of credit. How all these things are, it is not for me to say, their truth or falsehood could only be decided by the jury. But if true, they would so rebut the equitable circumstances insisted on by the defendant, that it would be proper to let the strict law take its course, and in that case, the plaintiff, having executed no conveyance to divest himself of his legal title, should be permitted to recover, provided he made out a legal title.
3. The opinion of the Court was asked, whether Stewart, being in debt, had a right to relinquish his title, to the prejudice of his creditors. This was not answered so distinctly as it ought to have been. A man who is in debt, and at the same time prosecuting an ejectment, may undoubtedly compromise with his adversary, in any manner he thinks proper, provided the transaction' is bona Jide, and not tending to defraud creditors. Because the creditors have no lien on the property, and, therefore, have no right to prevent its transfer. But supposing nothing to have been done, by which the right of Stewart was transferred or extinguished, before he assigned in trust for his creditors, his whole right, such as it was, would pass by the assignment, even although he might think ■his title not good, and the assignees might carry on the ejectment in his name, for the benefit of the creditors.
I have said, that the counsel for the plaintiff in error reduced their exceptions to seven points. But between some of these points, there was so great a similarity, and so close a connexion, that in considering part, I have been led to express my opinion upon the whole, I have only to add, there-» *89 fore, that the judgment should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de no,vp -awarded.
N. B. A copy of the abpve opinion, signed by the Chief Justice and Brackenridge J. was filed in the office of the prothonotary, at the request of the parties. Yeates J. was sick and absent, at the time of the argument, and therefore gave no opinion.